IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:16-cr-00006 |
| | ) | |
| v. | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| EDWARD JAIMAAL PRICE, | ) | |
| | ) | By: Hon. Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |
| | ) | |

On December 8, 2016, I heard arguments related to Defendant's Motion to Suppress. I have considered the briefs, heard testimony and the parties' arguments, and I now make the following findings of fact and conclusions of law.

On November 20, 2015, Deputy Hugh Wyatt, a sworn Task Officer with the U.S. Marshall's Service, was in an unmarked police vehicle, conducting surveillance on a residence located at 623 Wimbish Drive in Danville, Virginia. Deputy Wyatt was conducting surveillance on the house due to information that he had received that Bradley Lamont Price, a fugitive, was spending time at the Wimbish Drive residence. At one point, a man, later known to be Edward Jaimaal Price, but suspected to be Bradley Lamont Price, exited the residence and left in a 2004 Buick vehicle. At this point, Deputy Wyatt radioed Deputy Todd Carroll, an officer with the Virginia Department of Corrections and member of the Marshall's Task Force, to provide assistance.

Deputy Wyatt began to follow Defendant and, while doing so, noticed that the thirty-day temporary registration on the Buick was expired. Deputy Wyatt effectuated a traffic stop when Defendant pulled into a gas station, parking his vehicle behind Defendant's and activating the vehicle's blue lights. According to testimony, Deputy Carroll caught up to Deputy Wyatt and

1

Defendant seconds before Wyatt stopped Defendant. Deputy Carroll parked his vehicle in front of Defendant's to prevent Defendant from leaving.

Deputy Wyatt testified that he exited the vehicle and saw Defendant "slump" in his seat as if he was reaching for something under his seat. For safety purposes, Wyatt drew his weapon and ordered the Defendant to put his hands up. The Defendant only complied for a short while before Wyatt had to again order him to put his hands up. When he again failed to comply, Deputy Wyatt removed the driver from the vehicle for officer safety. Defendant contests this version of events, stating that Wyatt drew his weapon immediately after exiting his vehicle. It is unclear which version of events is correct, but it does not affect my conclusions.

As Deputy Wyatt removed Defendant from his vehicle, Deputy Wyatt smelled a strong odor consistent with unsmoked, raw marijuana coming from Defendant's person. Defendant was placed on the ground and handcuffed before being brought back up to his feet. Deputy Carroll, in trying to identify Defendant, whom both deputies still suspected may be Bradley Lamont Price, asked Defendant whether he had any identification. Defendant made a slight head motion towards his right front pocket. To confirm, Deputy Carroll touched Defendant's right front pocket. Defendant nodded, and Deputy Carroll asked if he could reach into the pocket to retrieve the Defendant's identification. Defendant nodded. Deputy Carroll testified that he reached into the pocket and removed all contents, finding what was later confirmed to be 74 ounces of crack-cocaine. Defendant was then placed under arrest.

As the Supreme Court has stated, "[s]ubjective intentions play no role in ordinary probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). The outdated temporary registration on Defendant's vehicle gave rise to probable cause that a traffic infraction was being committed, giving Deputies Carroll and Wyatt lawful authority to

conduct a traffic stop. Defendant was removed from his vehicle during a time where the deputies still believed Defendant to potentially be an armed fugitive, and in his testimony, Defendant did not deny that he failed to keep his hands raised. Their decision to remove Defendant from the vehicle and restrain him was reasonable.

Consent is a well-established exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Here, Deputy Carroll asked Defendant for identification to ascertain whether Defendant was Bradley Lamont Price. Defendant first gave a slight head nod towards his right front pocket. Deputy Carroll asked Defendant if he was indicating that his identification was in his right front pocket. Defendant again nodded towards his pocket. Deputy Carroll then asked Defendant if he could reach into his pocket to retrieve his identification. Defendant gave an affirmative nod. Given these facts, it is clear that Defendant consented to the search, which led to the discovery of the 74 grams of crack-cocaine. Importantly, Defendant has not contradicted this portion of the government's evidence.

Even if Defendant did not consent, however, the search was a lawful search incident to arrest based on Deputy Wyatt's testimony that he detected a strong odor of marijuana coming from Defendant's person. As the Fourth Circuit has held in *Humphries*, the odor of marijuana is sufficient to establish probable cause that a suspect is in possession of marijuana if the smell can be localized to that specific suspect. *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). In this case, Defendant was the sole occupant of the vehicle, and there was no one else in the immediate vicinity of Defendant and law enforcement. The Fourth Circuit has held that a search of a suspect immediately before his formal arrest satisfies the requirement that a lawful search incident to arrest be closely related in time to that arrest. *United States v. Miller*, 925 F.2d 695, 698–99 (4th Cir. 1991). If, in fact, Defendant did not actually consent to the search, the

3

search can be viewed as a search incident to arrest immediately preceding the arrest based on the probable cause provided by the odor of marijuana.

On the basis of these findings, Defendant's Motion to Suppress the narcotics found on Defendant's person is denied.

ENTERED this 13th day of December, 2016.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE